UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| IRA HYUNDAI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00055-LEW |
| | ) | |
| SPC ACQUISITION COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Ira Hyundai, Inc., agreed to sell, and Defendant SPC Acquisition Company LLC agreed to buy, certain commercial premises and realty located at 49 Spring Street, Scarborough, Maine. They entered their contract in June 2022 and set a closing date of September 2022. Defendant sought extensions and Plaintiff offered extensions on certain terms. However, the closing date came and went without a mutually agreeable agreement to extend.

As alleged by Plaintiff, Defendant "unilaterally elected not to close and meet its obligations under the Contract because the deal no longer made sense for [Defendant] financially." Compl. ¶ 39. Plaintiff observes that the risk of a "shift in the market" is "borne by both buyers and sellers in the ordinary course of business." *Id.* ¶ 40. Plaintiff alleges that Defendant's default was influenced by "a shift in the current interest rate environment" that "would inherently adversely impact the value of the property." *Id.* ¶ 46.

The Purchase and Sale Agreement stipulated in a section titled "Termination of Agreement" that in the event of a default by Defendant, the parties agreed "that it would be extremely difficult to determine seller's actual damages" and that, therefore, "seller shall be entitled to an amount equal to the amount of the earnest money deposit . . . as liquidated damages and as seller's exclusive remedy." *Id.* ¶ 49.  They also agreed that "such amount is a reasonable pre-estimate of seller's actual damages for buyer's default." *Id.*[1]

In its Complaint, Plaintiff requests that the Court "[d]etermine and declare the right and obligations of the Closing Agent to release and deliver to [Plaintiff] the entire . . . earnest money deposit," but also seeks a general recovery of damages "under Counts I–III," Compl. p.12, though there are, in fact, four counts: (I) Breach of Contract, (II) Intentional Misrepresentation, (III) Negligent Misrepresentation, and (IV) Tortious Interference with Contractual Rights and Prospective Economic Interests.

Defendant has moved to dismiss counts II, III, and IV based on the liquidated damage term set out in the Termination of Agreement provision; Plaintiff's failure to allege fraud, negligent misrepresentation, or intimidation in anything other than conclusory terms under the separate count headings; Plaintiff's failure to plead fraud with particularity, and a purported Maine legal tradition that is cynical of lawyerly efforts to transform contractual duties and remedies into tort duties and remedies.  Mot. to Dismiss (ECF No. 7).  Plaintiff responds that the stipulation limiting its remedy does not limit its ability to assert

---

[1] The parties are domiciled in different states and the earnest money deposit "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a).  Consequently, the Court has jurisdiction.

alternative theories of relief in order to recover said sum, and otherwise contends that "con-torts" are alive and well in Maine. Pl.'s Opp'n (ECF No. 13).

Defendant's Motion is granted. The universe of theories of recovery in the event of the degradation of the commercial relationship once consummated between the parties is simply the contract. The allegations do not yield a plausible scenario under which the general prohibition of concurrent theories of contract and tort would be excepted. Far from legal exotica, the allegations reveal a garden-variety commercial contract dispute, the type which the law generally respects the integrity of the parties' expectations to be left to their original bargain. Absent an independent basis for a tort claim, as here, Plaintiff cannot simply repurpose the contractual relationship as the basis for recovery in tort. Moreover, the damage remedy is stipulated in the event of a breach; Plaintiff has no prospect of recovering damages that are different, greater, or additional where, as here, Plaintiff cannot sufficiently and plausibly assert tort claims independent of the contractual relationship between the parties. Plaintiff may regret the limitations of the liquidated damages clause. That only confirms the predicate to its use; to wit, that actual damages may be difficult or impossible to prove in the event of a breach. However, that does not authorize me to renegotiate the terms of the contract retroactively by green lighting a parade of alternative tort theories when no plausible independent basis for such claims has been asserted. Given the combination of these factors—a contractual duty, exclusively economic damages, a stipulation as to the value of the same, and no viable independent basis for a tort remedy—Plaintiff's Complaint fails to show that Plaintiff is entitled to relief under any claim other

than Count I.[2]  Accordingly, Counts II, III, and IV will be dismissed as non-viable claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    SO ORDERED.

    Dated this 12th day of January, 2024.

                                        /s/ Lance E. Walker
                                        UNITED STATES DISTRICT JUDGE

---

[2] The logic of this outcome is more ineluctable than foreordained by any particular precedent, though the same combination of factors has been deemed dispositive in similar situations.  *See*, *e.g.*, *Stull v. First Am. Title Ins. Co.*, 745 A.2d 975, 980 (2000) (allegations of a failure to act or proceed in good faith in relation to contractual obligations are subsumed within a breach of contract claim); *Schmid Pipeline Const.*, *Inc. v. Summit Nat. Gas of Maine*, *Inc.*, No. 1:13-cv-464-GZS, 2014 WL 3600437, at *4 & n.6 (D. Me. July 22, 2014) (Nivison, Mag. J., *recommended decision aff'd over obj.*) (dismissing for lack of independent duty in tort).  Plaintiff has not cited legal authority to support the proposition that Maine law imposes a legal duty on parties to a contract to be financially capable of performance regardless of shifts in the interest rate environment, though that is the nub of their contention.